## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | | |
|---|---|---|
| EBI HOLDINGS, INC. and EBI, L.P., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No.  07-3259 |
| | ) | |
| DAN BUTLER, PANACEA HEALTH | ) | |
| LLC, BLACKSTONE MEDICAL, | ) | |
| INC., ANTHONY JAMIE RILEY, | ) | |
| and ANTHONY J. PAGANO, | ) | |
| individually and in their professional | ) | |
| capacities, | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION

JEANNE E. SCOTT, U.S. District Judge:

This matter is before the Court on Plaintiffs' Motion to Dismiss Defendant Butler's Counter Complaint and to Strike Affirmative Defenses (d/e 42) (Motion to Dismiss and to Strike).  Plaintiffs EBI Holdings, Inc. and EBI, L.P., doing business as Biomet Spine, Biomet Trauma, Biomet Osteobiologics, and Biomet Bracing, are in the business of developing, manufacturing, and marketing medical products.  Defendant Butler was hired by Plaintiffs in June 2000 to sell Plaintiffs' products in central Illinois

and eastern Iowa.  Butler's employment with Plaintiffs terminated effective June 1, 2007.  Plaintiffs' First Amended Complaint (d/e 35) alleges claims of breach of contract (Count I), breach of duty of loyalty and fiduciary duty (Count II), breach of duty of loyalty (Count III), threatened and actual misappropriation of trade secrets (Count VI), unjust enrichment (Count VIII), civil conspiracy (Count IX) and tortious interference with prospective economic advantage (Count X) against Defendant Butler.  Plaintiffs also seek an order requiring Butler to specifically perform alleged agreements that he signed (Count VII).  Butler filed an Answer to First Amended Complaint (d/e 39), asserting two affirmative defenses and alleging one counterclaim.  Plaintiffs ask the Court to strike Butler's Affirmative Defenses and to dismiss his Counterclaim.  See Fed. R. Civ. P. 12(b)(6) & 12(f).  For the reasons set forth below, the Motion to Dismiss and to Strike is allowed.

<u>BACKGROUND</u>

Butler was employed by Plaintiffs as the Central Illinois and Central Eastern Iowa territory sales manager, selling Plaintiffs' products including electrical bone growth simulator devices.  Butler's customer base consisted of approximately forty hospitals and approximately 300 orthopedists,

2

neurosurgeons, and podiatrists.  At the time Butler was hired, he executed a Confidentiality and Non-Competition Agreement, dated June 20, 2000. First Amended Complaint, Ex. B, Confidentiality and Non-Competition Agreement, dated June 20, 2000 (June 2000 Agreement).  A year later, Butler executed a second Confidentiality and Non-Competition Agreement, dated July 18, 2001, and signed July 20, 2001.  First Amended Complaint, Ex. C, Confidentiality and Non-Competition Agreement, dated July 18, 2001 (July 2001 Agreement).

Plaintiffs assert that, in 2006, they decided to streamline certain sales and marketing efforts.  According to Plaintiffs, as a result of this decision, they entered into a Distribution Agreement with One Medical, Inc., effective June 1, 2007, to distribute Plaintiffs' products in parts of Illinois, Iowa, and Indiana.  In 2006, Plaintiffs informed Butler that his employment would terminate on June 1, 2007, and that if Butler wished to continue to market Plaintiffs' products, he must accept employment with One Medical. Defendant Butler's Answer to First Amended Complaint, p. 24, ¶ 4.  Butler states that he sought assurances from Plaintiffs and One Medical that, at One Medical, his salary and territory would remain the same as it was with the Plaintiffs.  Id., p. 8, ¶ 57.  According to Butler, Plaintiffs and One

Medical failed to make assurances as to the continued integrity of his sales territory or compensation package and it was Butler's belief that his sales territory would be significantly affected and his compensation package would be significantly reduced should he accept a position with One Medical.  <u>Id.</u>, p. 24, ¶ 5.  Butler did not accept employment with One Medical and his employment with Plaintiffs terminated effective June 1, 2007.  Butler admits that, prior to June 1, 2007, One Medical had not distributed medical products in his territory.

Plaintiffs assert that Butler was asked to transfer his inventory and confidential and customer information to One Medical.  According to Plaintiffs, Butler failed to transfer his entire inventory and provided One Medical with only cursory customer information.  Plaintiffs further assert that they also did not receive Butler's entire inventory and that they received only small amounts of confidential and customer information from Butler.  According to Plaintiffs, Butler formed a new competing entity, Defendant Panacea Health LLC (Panacea), with Defendants Anthony Riley and Anthony Pagano.  Panacea entered into an agreement with Defendant Blackstone Medical (Blackstone) relating to the sale of electrical bone growth simulator devices.  According to Plaintiffs, Blackstone agreed to give

4

Panacea an override commission on all electrical bone growth simulator sales made in Butler's territory to former and existing customers of the Plaintiffs. Plaintiffs assert that since Butler's employment with Plaintiffs terminated, Butler has been working for and with competitors of Plaintiffs and directly competing for business against Plaintiffs in the same territory in which he worked as an employee of the Plaintiffs. Plaintiffs further allege that Butler gave Panacea and Blackstone confidential information while he was still employed by Plaintiffs.

Plaintiffs' First Amended Complaint alleges, among claims, that Defendant Butler breached the June 2000 and July 2001 Agreements. Butler's Answer to First Amended Complaint asserts two affirmative defenses and raises one counterclaim. Butler's First Affirmative Defense asserts that Plaintiffs materially breached the July 2001 Agreement by altering the integrity of Butler's sales territory as well as his compensation package. Butler's Second Affirmative Defense alleges that "[b]y ending its [sic] employment relationship with the Defendant, Plaintiffs effectively abandoned the Contract entered into in July of 2001." Defendant Butler's Answer to First Amended Complaint, p. 25, ¶ 6. Butler also alleges a breach of contract counterclaim, asserting that Plaintiffs breached the July 2001

Agreement in several specifically identified ways.  Plaintiffs ask the Court to dismiss Butler's Counterclaim and to strike his Affirmative defenses.

ANALYSIS

A.    MOTION TO DISMISS COUNTERCLAIM

Butler alleges a breach of contract counterclaim, asserting that Plaintiffs breached the July 2001 Agreement by: (1) altering the integrity of Butler's sales territory and his compensation package, (2) failing to make assurances as to the continued integrity of Butler's sales territory and compensation package, and (3) terminating Butler's employment.  Butler's Answer to First Amended Complaint, p. 26, ¶¶ 4, 5, & 8.  Plaintiffs move to dismiss the Counterclaim for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).  In analyzing Plaintiffs' request to dismiss Butler's Counterclaim, the Court must accept all well-pleaded allegations in the Counterclaim as true and draw all reasonable inferences in Defendant Butler's favor.  See Petrakopoulou v. DHR Intern., Inc., 2008 WL 5273517, at *1 (N.D. Ill. (December 17, 2008) (citing McMillan v. Collection Prof'ls, Inc., 455 F.3d 754, 758 (7th Cir. 2006)).  "Dismissal is warranted only if the factual material in the counterclaim[] fails plausibly to suggest that defendant is entitled to relief."  Id. (citing Bell Atlantic Corp. v. Twombly,

6

550 U.S. 544 (2007)).  Generally, at the motion to dismiss stage, the Court limits its analysis to the allegations set forth in the pleadings; however, "[a] copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."  Fed. R. Civ. P. 10(c).  Thus, because the July 2001 Agreement is attached as an exhibit to the First Amended Complaint and referenced in the Counterclaim, the Court may consider it in ruling on the Motion to Dismiss.

The July 2001 Agreement provides, in part, as follows:

> In consideration of the Employee's employment, the addition of a Sales Associate to Employee's territory, the receipt of certain confidential information from the Company, the mutual covenants contained in this Agreement and other good and valuable consideration, the parties agree as follows: . . . .

First Amended Complaint, Ex. C, July 2001 Agreement, p. 1.  Butler's Counterclaim alleges that "[a] material consideration for Butler entering into the agreement was the 'other good and valuable consideration' which was that [Plaintiffs] would continue their employment relationship, insure the integrity of his territory, and that his compensation would remain substantially the same."  Butler's Answer to First Amended Complaint, p. 26, ¶ 2.

The July 2001 Agreement provides that "New Jersey law shall govern

7

[its] construction, enforceability and interpretation . . . ." <u>First Amended Complaint</u>, Ex. C, <u>July 2001 Agreement</u>, p. 6. "In a suit where the federal court's subject matter jurisdiction is based on diversity, such as this one, the forum state's choice of law rules determine the applicable substantive law." <u>Sound of Music Co. v. Minnesota Min. & Mfg. Co.</u>, 477 F.3d 910, 915 (7th Cir. 2007) (<u>citing</u> <u>Klaxon Co. v. Stentor Elec. Mfg. Co.</u>, 313 U.S. 487, 496 (1941); <u>Thomas v. Guardsmark, Inc.</u>, 381 F.3d 701, 704-05 (7th Cir. 2004)). The Seventh Circuit has recognized that Illinois courts generally adhere to a contract's choice of law provisions if the contract is valid and the law does not contradict Illinois public policy. <u>Thomas</u>, 381 F.3d at 705. The parties agree that New Jersey law controls the instant dispute, and the Court finds that the application of New Jersey law would not contravene Illinois public policy because it is substantially similar to relevant Illinois law.

To prevail on his breach of contract counterclaim, Butler must establish: (1) the existence of a valid contract; (2) that Plaintiffs breached the contract; (3) that Butler performed his obligations under the contract; and (4) resulting damages. <u>Ford Motor Co. v. Edgewood Properties, Inc.</u>, 2009 WL 150951, *4 (D. N.J. January 20, 2009) (applying New Jersey

law).  As set forth below, even when viewed in the light most favorable to Butler, the allegations of the Counterclaim are insufficient to support a finding that Butler is entitled to relief under any of his proffered theories.

The Court turns first to Butler's assertion that Plaintiffs terminated his employment in violation of the July 2001 Agreement.  Under New Jersey law, "an employer may fire an employee for good reason, bad reason, or no reason at all under the employment-at-will doctrine.  An employment relationship remains terminable at the will of either an employer or employee, unless an agreement exists that provides otherwise," absent inapplicable exceptions.  Wade v. Kessler Institute, 798 A.2d 1251, 1258 (N.J. 2002) (internal quotations and citations omitted).  Butler argues that he was not an at-will employee, but rather contractually entitled to continued employment under the July 2001 Agreement.  The Court disagrees.

The July 2001 Agreement provides that it is being made, in part, "[i]n consideration of the Employee's employment . . . ."  First Amended Complaint, Ex. C, July 2001 Agreement, p. 1.  This language, however, is insufficient to alter Butler's at-will employee status.  Under New Jersey law, "[e]mployment contracts for an indefinite duration create an at-will

9

employment relationship." <u>Obendorfer v. Gitano Group, Inc.</u>, 838 F.Supp. 950, 953 (D. N.J. 1993) (applying New Jersey law).  A New Jersey appellate court addressed a post-employment restrictive agreement containing similar language in <u>Hogan v. Bergen Brunswig Corporation</u>, 378 A.2d 1164 (N.J. Super.Ct.App.Div. 1977).   The agreement at issue in <u>Hogan</u> placed restrictions on former employees "in consideration of and as part of the terms of employment of the Employee by the Company . . . ." <u>Id</u>. at 1166. The <u>Hogan</u> Court noted that, where no definite term is indicated, an employment contract is deemed to be at will and subject to termination with or without cause.  <u>Id</u>.  The Court determined that the continuation of the plaintiff's employment for approximately three years after he agreed to the restrictive covenant  provided adequate consideration for the covenant. <u>Id</u>. at 1167.

Following the principles outlined in <u>Hogan</u>, the Court determines that the provision in the July 2001 Agreement stating the agreement was made, in part, "[i]n consideration of the Employee's employment" did not alter Butler's status as an at-will employee.  Butler fails to identify any other provision that would constitute an agreement for continued employment, and the Court's review of the July 2001 Agreement reveals none.  The

Seventh Circuit has instructed that, to the extent that the terms of an attached contract conflict with the allegations of a claim, the contract controls.  <u>Centers v. Centennial Mortg., Inc.</u>, 398 F.3d 930, 933 (7th Cir. 2005); <u>see also</u> <u>Rosenblum v. Travelbyus.com Ltd.</u>, 299 F.3d 657, 661 (7th Cir. 2002) ("The court is not bound to accept the pleader's allegations as to the effect of the exhibit, but can independently examine the document and form its own conclusions as to the proper construction and meaning to be given the material.")  Thus, the allegations in the Counterclaim read together with the July 2001 Agreement fail to plausibly suggest that a contract for continuing employment existed.

Butler further contends that Plaintiffs breached the July 2001 Agreement by altering the integrity of his sales territory and his compensation package and by failing to make assurances as to the continued integrity of his sales territory and compensation package.  Butler concedes that the July 2001 Agreement does not expressly contain these terms. Instead, he alleges that these provisions are encompassed within the phrase "other good and valuable consideration."  <u>See</u> <u>Butler's Answer to First Amended Complaint</u>, p. 26, ¶ 2.  However, even if the Court adopts Butler's position that the phrase "other good and valuable consideration" placed

Plaintiffs under contractual obligation to ensure the integrity of Butler's sales territory and his compensation package and to provide assurances of the same, Butler fails to adequately allege a breach.  As set forth above, it is clear that Butler was an at-will employee; thus, there was no requirement that Plaintiffs continue his employment at the terms previously offered. Butler fails to allege that Plaintiffs altered either his sales territory or his compensation package prior to his June 1, 2007, termination.  Similarly, Butler's claim that Plaintiffs failed to make assurances regarding the continued integrity of his sales territory and compensation package pertains to the period following June 1, 2007.  Butler concedes that, prior to June 1, 2007, One Medical had not distributed medical products in Butler's territory.  <u>Butler's Answer to First Amended Complaint</u>, p. 9 (admitting ¶ 59 of Plaintiff's First Amended Complaint); <u>First Amended Complaint</u>, p. 16, ¶ 59.  Butler only asserts that it was his belief that his sales territory would have been significantly altered and his compensation reduced had he accepted a position with One Medical.  <u>Butler's Answer to First Amended Complaint</u>, p. 24, ¶ 5.  These allegations fail to plausibly suggest that Butler may be entitled to relief on his breach of contract counterclaim.  Plaintiffs' request to dismiss Butler's Counterclaim is allowed.

B.     MOTION TO STRIKE AFFIRMATIVE DEFENSES

"Motions to strike affirmative defenses are generally disfavored and should be granted only when the affirmative defense is insufficient on the face of the pleading." Rizzo v. Ball Horticultural Co., 2005 WL 1126538, at *3 (N.D. Ill. April 20, 2005).  In analyzing a Rule 12(f) motion to strike an affirmative defense, the Court applies the standard used for a motion to dismiss under Rule 12(b)(6).  Id. (citing Heller Fin., Inc., v. Midwhey Powder Co., 883 F.2d 1286 (7th Cir. 1989)).

Butler's First Affirmative Defense asserts that Plaintiffs materially breached the July 2001 Agreement by altering the integrity of Butler's sales territory as well as his compensation package.  Again, even if the Court were to assume that the phrase "other good and valuable consideration" encompassed an obligation for Plaintiffs to ensure the integrity of Butler's sales territory and his compensation package, the allegations of the pleadings do not support a finding of a breach.  Butler was an at-will employee, and he fails to allege that Plaintiffs altered either his sales territory or his compensation package prior to his June 1, 2007,

termination.  Butler's First Affirmative Defense is stricken.[1]

Butler's Second Affirmative Defense alleges that Plaintiffs effectively abandoned the July 2001 Agreement by terminating Butler's employment. Under New Jersey law, "an abandonment of a contract can only take place by the consent of both parties, and requires as clear evidence of the waiver as of the existence of the contract.  To effectuate an abandonment, mutual assent is always required." County of Morris v. Fauver, 707 A.2d 958, 965 (N.J. 1998) (internal quotations and citations omitted).  Mutual assent need not be express, but may be inferred from all of the circumstances.  "As a general rule, a contract will be treated as abandoned where one party acts in a manner inconsistent with the existence of the contract and the other party acquiesces in that behavior." Id. (internal quotations and citations omitted).

Butler contends that Plaintiffs acted in a manner inconsistent with the contract when they terminated his employment.  However, the July 2001 Agreement, by its express terms, was intended to place post-termination

---

[1]The Court notes that this holding does not obviate Plaintiffs' obligation to prove performance as an element of their breach of contract claim.  See Ford Motor Co., 2009 WL 150951, *4 (setting out elements necessary to establish breach of contract under New Jersey law).

restrictions on Butler.  See e.g., First Amended Complaint, Ex. C, July 2001 Agreement, p. 3-4.  Because the July 2001 Agreement clearly contemplated the termination of Butler's employment, Plaintiffs' decision to terminate his employment at the time it switched to a distributorship sales model is not inconsistent with the contract.  Thus, the allegations of the Second Affirmative Defense, when read together with the July 2001 Agreement, are insufficient to plausibly suggest that Butler could successfully assert the defense.  Butler's Second Affirmative Defense is stricken.

<u>CONCLUSION</u>

THEREFORE, for the reasons set forth above, Plaintiffs' Motion to Dismiss Defendant Butler's Counter Complaint and to Strike Affirmative Defenses (d/e 42) is ALLOWED.  Defendant Butler's one-count Counter Complaint is DISMISSED pursuant to Federal Rule of Civil Procedure 12(b)(6).  The First and Second Affirmative Defenses are STRICKEN from Defendant Dan Butler's Answer to First Amended Complaint.

IT IS THEREFORE SO ORDERED.

ENTER:   February 13, 2009

FOR THE COURT:

s/ Jeanne E. Scott
JEANNE E. SCOTT
UNITED STATES DISTRICT JUDGE