E-FILED
Tuesday, 17 February, 2009  03:12:44 PM
Clerk, U.S. District Court, ILCD

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | | |
|---|---|---|
| EBI HOLDINGS, INC. and EBI, L.P., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No.  07-3259 |
| | ) | |
| DAN BUTLER, PANACEA HEALTH | ) | |
| LLC, BLACKSTONE MEDICAL, | ) | |
| INC., ANTHONY JAMIE RILEY, | ) | |
| and ANTHONY J. PAGANO, | ) | |
| individually and in their professional | ) | |
| capacities, | ) | |
| | ) | |
| Defendants. | ) | |

## <u>OPINION</u>

JEANNE E. SCOTT, U.S. District Judge:

This matter is before the Court on Defendant Blackstone Medical, Inc.'s Motion to Dismiss Counts IV, V, VIII, IX, and X of Plaintiff's First Amended Complaint (d/e 51) (Blackstone's Motion to Dismiss), Defendants Panacea Health LLC's, Anthony Riley's and Anthony Pagano's Motion for Judgment on the Pleadings and to Adopt and Incorporate by Reference (d/e 53) (Panacea Defendants' Motion for Judgment on the Pleadings), and Defendant Dan Butler's Motion for Judgment on the Pleadings and to

Adopt and Incorporate by Reference (d/e 64) (Butler's Motion for Judgment on the Pleadings).

Plaintiffs EBI Holdings, Inc. and EBI, L.P., doing business as Biomet Spine, Biomet Trauma, Biomet Osteobiologics, and Biomet Bracing, are in the business of developing, manufacturing, and marketing medical products. Defendant Butler was hired by Plaintiffs in June 2000 to sell Plaintiffs' products in central Illinois and eastern Iowa.  During the course of his employment with Plaintiffs, Butler signed certain Confidentiality and Non-Competition Agreements.  Butler's employment with Plaintiffs terminated effective June 1, 2007.  According to Plaintiffs, Butler formed a new competing entity, Defendant Panacea Health LLC (Panacea), with Defendants Anthony Riley and Anthony Pagano.  Plaintiffs assert that Panacea entered into an agreement with Defendant Blackstone Medical (Blackstone) relating to the sale of medical products in the territory in which Butler had represented the Plaintiffs.

Plaintiffs' ten-count First Amended Complaint (d/e 35) alleges a variety of claims arising out of these circumstances.  Blackstone moves to dismiss Counts IV, V, VII, IX, and X of the First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  Panacea, Riley, and

Pagano (collectively the Panacea Defendants) seek judgment on the pleadings on Counts IV, V, VII, IX, and X pursuant to Federal Rule of Civil Procedure 12(c). Butler seeks judgment on the pleadings on Counts II, III, VIII, IX, and X. The Panacea Defendants and Defendant Butler seek to incorporate the arguments from Blackstone's Motion to Dismiss and accompanying Memorandum of Law in Support of Motion to Dismiss Counts IV, V, VIII, IX, X of Plaintiffs' First Amended Complaint (d/e 52) (Blackstone's Memorandum) into their submissions. For the reasons set forth below, the requests to incorporate by reference are allowed; however, the Motion to Dismiss and the Requests for Judgment on the Pleadings are denied.

<u>BACKGROUND</u>

Butler was employed by Plaintiffs as the Central Illinois and Central Eastern Iowa territory sales manager, selling Plaintiffs' products including electrical bone growth simulator devices. Butler's customer base consisted of approximately forty hospitals and approximately 300 orthopedists, neurosurgeons, and podiatrists. At the time Butler was hired, he executed a Confidentiality and Non-Competition Agreement, dated June 20, 2000. <u>First Amended Complaint</u>, Ex. B, <u>Confidentiality and Non-Competition</u>

Agreement, dated June 20, 2000 (June 2000 Agreement). A year later, Butler executed a second Confidentiality and Non-Competition Agreement, dated July 18, 2001, and signed July 20, 2001. First Amended Complaint, Ex. C, Confidentiality and Non-Competition Agreement, dated July 18, 2001 (July 2001 Agreement).

Plaintiffs assert that, in 2006, they decided to streamline certain sales and marketing efforts. According to Plaintiffs, as a result of this decision, they entered into a distribution agreement with One Medical, Inc., effective June 1, 2007, to distribute Plaintiffs' products in parts of Illinois, Iowa, and Indiana. In 2006, Plaintiffs informed Butler that his employment would terminate on June 1, 2007 and that if Butler wished to continue to market Plaintiffs' products, he must accept employment with One Medical. Defendant Butler's Answer to First Amended Complaint (d/e 39) (Butler's Answer), p. 24, ¶ 4. Butler states that he sought assurances from Plaintiffs and One Medical that, as an employee of One Medical, his salary and territory would remain the same as they were with the Plaintiffs. Id., p. 8, ¶ 57. According to Butler, Plaintiffs and One Medical failed to make assurances as to the continued integrity of his sales territory or compensation package and it was Butler's belief that his sales territory

4

would be significantly affected and his compensation package would be significantly reduced should he accept a position with One Medical.  Id., p. 24, ¶ 5.  Butler did not accept employment with One Medical and his employment with Plaintiffs terminated effective June 1, 2007.

Plaintiffs assert that Butler was asked to transfer his inventory and confidential and customer information to One Medical.  According to Plaintiffs, Butler failed to transfer his entire inventory and provided One Medical with only cursory customer information.  Plaintiffs further assert that they also did not receive Butler's entire inventory and that they received only small amounts of confidential and customer information from Butler.  According to Plaintiffs, Butler formed Panacea, with Defendants Riley and Pagano and entered into an agreement with Defendant Blackstone relating to the sale of electrical bone growth simulator devices.  According to Plaintiffs, Blackstone agreed to give Panacea an override commission on all electrical bone growth simulator sales made in Butler's territory to former and existing customers of the Plaintiffs.  Plaintiffs assert that since Butler's employment with Plaintiffs terminated, Butler has been working for and with competitors of Plaintiffs and directly competing for business against Plaintiffs in the same territory in which he worked as an employee of the

Plaintiffs.  Plaintiffs further allege that, while Butler was still employed by Plaintiffs, he gave Panacea and Blackstone confidential information, competed with Plaintiffs, and diverted customers to Blackstone and the Panacea Defendants.

Plaintiffs' First Amended Complaint alleges the following claims against Defendant Butler: breach of contract (Count I), breach of duty of loyalty and fiduciary duty (Count II), breach of duty of loyalty (Count III), threatened and actual misappropriation of trade secrets (Count VI), unjust enrichment (Count VIII), civil conspiracy (Count IX), and tortious interference with prospective economic advantage (Count X).  Plaintiffs also seek an order requiring Butler to specifically perform alleged agreements that he signed (Count VII).  Plaintiffs' First Amended Complaint alleges the following claims against Defendants Blackstone, Panacea, Riley, and Pagano: inducement of breaches of fiduciary duty and duty of loyalty (Count IV), tortious interference with contract (Count V), threatened and actual misappropriation of trade secrets (Count VI), unjust enrichment (Count VIII), civil conspiracy (Count IX) and tortious interference with prospective economic advantage (Count X).  Defendant Butler filed an Answer to the First Amended Complaint, as did the Panacea Defendants.

Butler's Answer; Defendant Panacea Health LLC, Anthony Riley, and Anthony Pagano's Answer to Plaintiffs First Amended Complaint (d/e 49) (Panacea Defendants' Answer). Defendant Blackstone filed an Answer and Affirmative Defenses to Counts I, II, III, VI, and VII of Plaintiffs' First Amended Complaint (d/e 50) (Blackstone's Answer), together with its pending Motion to Dismiss Counts IV, V, VIII, IX, and X. The Panacea Defendants then filed their pending Motion for Judgment on the Pleadings, seeking to incorporate by reference the arguments from Blackstone's Motion to Dismiss. Finally, Defendant Butler filed his pending Motion for Judgment on the Pleadings, also asking to incorporate the arguments from Blackstone's Motion to Dismiss.

## ANALYSIS

A.   DEFENDANT BLACKSTONE

Defendant Blackstone asks the Court to dismiss Counts IV, V, VIII, IX, and X. In analyzing Blackstone's Motion to Dismiss, the Court must accept all well-pleaded allegations in the First Amended Complaint as true and draw all reasonable inferences in Plaintiffs' favor. See Tamayo v. Blagojevich, 526 F.3d 1074, 1081 (7th Cir. 2008). Plaintiffs need only provide a short and plain statement giving Defendants fair notice of the

nature and basis of the claim.  <u>Bell Atlantic Corp. v. Twombly</u>, 127 S.Ct. 1955, 1964 (2007); <u>Fed. R. Civ. P.</u> 8(a)(2).  Plaintiffs' factual allegations must be sufficient to state a claim of relief that is plausible on its face, rather than merely speculative.  <u>Twombly</u>, 127 S.Ct. at 1965, 1974.

Blackstone asserts that the state law claims in Counts IV, V, VIII, IX, and X are preempted under § 8(a) of the Illinois Trade Secrets Act (ITSA). 765 ILCS 1065/8(a).[1]  Blackstone further contends that Count IX should be dismissed because it merely duplicates Plaintiffs' underlying tort claims and that Count X should be dismissed for failure to allege facts sufficient to support a finding on an essential element of the claim.  The Court turns first to the general principles controlling the preemption analysis and then to an analysis of each count individually.

As the Seventh Circuit has recognized, § 8(a) of ITSA "abolishes claims other than those based on contract arising from misappropriated trade secrets, replacing them with claims under the Act itself."  <u>Hecny Transp., Inc. v. Chu</u>, 430 F.3d 402, 404 (7th Cir. 2005).  Section 8 provides as follows:

(a)    Except as provided in subsection (b), this Act is intended

---

[1]Plaintiffs allege ITSA claims in Count VI.

to displace conflicting tort, restitutionary, unfair competition, and other laws of this State providing civil remedies for misappropriation of a trade secret.

(b)    This Act does not affect:

(1)    contractual remedies, whether or not based upon misappropriation of a trade secret, provided however, that a contractual or other duty to maintain secrecy or limit use of a trade secret shall not be deemed to be void or unenforceable solely for lack of durational or geographical limitation on the duty;

(2)    other civil remedies that are not based upon misappropriation of a trade secret;

(3)    criminal remedies, whether or not based upon misappropriation of a trade secret; or

(4)    the definition of a trade secret contained in any other Act of this State.

765 ILCS 1065/8.  The ITSA defines "trade secret" as follows:

information, including but not limited to, technical or non-technical data, a formula, pattern, compilation, program, device, method, technique, drawing, process, financial data, or list of actual or potential customers or suppliers, that:

(1)    is sufficiently secret to derive economic value, actual or potential, from not being generally known to other persons who can obtain economic value from its disclosure or use; and

(2)    is the subject of efforts that are reasonable under the circumstances to maintain its secrecy or confidentiality.

765 ILCS 1065/2(d).

According to Blackstone, Counts IV, V, VIII, IX, and X allege common law causes of action based on Blackstone's alleged misappropriation of Plaintiffs' trade secrets and confidential information and are, therefore, preempted under ITSA § 8(a).  In making this argument, Blackstone fails to address <u>Hecny</u>, the seminal case on point in this circuit.  <u>Hecny</u>, 430 F.3d 402.  The <u>Hecny</u> decision marked a departure from the broad preemptive effect that had been applied in prior federal cases interpreting Illinois law.  <u>Id.</u> at 404.  Thus, the pre-<u>Hecny</u> cases upon which Blackstone relies are unpersuasive.  In <u>Hecny</u>, the Seventh Circuit noted that Illinois courts had little to say about the effect of § 8(a).  <u>Id.</u>  Thus, because the ITSA is based on the Uniform Trade Secrets Act of 1985, the Court looked to other jurisdictions' interpretation of the preemptive scope of § 8(a).  The Court found that Illinois would follow the dominant view "that claims are foreclosed only when they rest on the conduct that is said to misappropriate trade secrets."  <u>Id.</u> at 404-05.  Given the absence of subsequent Illinois precedent to the contrary, the Court will follow the <u>Hecny</u> Court's interpretation of the Illinois statute's preemptive scope.

After <u>Hecny</u>, claims are deemed to be preempted only when they rest on the conduct that is said to misappropriate trade secrets.  <u>Jano Justice</u>

Systems, Inc. v. Burton, 2008 WL 5191765, *2 (C.D. Ill. December 11, 2008).  Thus, in analyzing preemption, the Court must determine whether the claim "rests on the misappropriation of trade secrets or whether it stems from other conduct." Id.  "After Hecny, the test for a non-ITSA claim is not whether the plaintiff arguably could have brought an ITSA claim.  Rather, the test is whether the plaintiff's claim would lie if the information at issue were non-confidential."  RTC Industries, Inc. v. Haddon, 2007 WL 2743583, *3 (N.D. Ill. September 10, 2007).  With this in mind, the Court turns to the challenged counts, addressing ITSA preemption and, when applicable, Blackstone's alternate arguments for dismissal.

In Count IV, Plaintiffs allege a claim of inducement of breaches of fiduciary duty and duty of loyalty.  In support of that claim, Plaintiffs allege that Butler was a corporate officer and as such, owed Plaintiffs a heightened fiduciary duty.  First Amended Complaint, ¶ 95.  Plaintiffs further allege that, as an employee, Butler owed Plaintiffs a duty of loyalty that included a duty not to commence business as or with a rival while still in Plaintiffs' service and not to act contrary to Plaintiffs' interests during the course of his employment.  Id., ¶ 121.  Plaintiffs assert that Butler breached these duties not only by communicating customer information, but also by

competing with Plaintiffs and diverting customers to Blackstone and the
Panacea Defendants, while he was still employed by Plaintiffs.  Id., ¶ 97,
110.  Indeed, the First Amended Complaint contains a detailed list of
alleged competitive activities by Butler that includes conduct beyond
misappropriation of trade secrets, including arranging and attending
meetings with Plaintiffs' customers to show off Blackstone products and
selling Blackstone products.  Id., ¶ 76.  According to Plaintiffs, Blackstone
and the Panacea Defendants "were aware of, encouraged and induced these
breaches of fiduciary duty and duty of loyalty" and knowingly accepted
benefits resulting from the breaches.  Id., ¶ 123, 125.  Clearly, Count IV as
alleged stems from conduct other than misappropriation of trade secrets,
and thus, it is not preempted by the ITSA.[2]

In Count V, Plaintiffs allege tortious interference with contract.
Specifically, Plaintiffs allege in part that Blackstone and the Panacea
Defendants induced and encouraged Defendant Butler: (1) to breach the
June 2000 and July 2001 Agreements by engaging in competitive activities
while still an employee of Plaintiffs in violation of ¶ 3 of the Agreements,

_____

[2]In the end, if this Count and others are based only on conduct predicated on
misappropriation of trade secrets, they will fail.

and (2) to compete against Plaintiffs both before and after his employment was terminated and to solicit Plaintiffs' customers and former customers in violation of ¶ 3 of the Agreements.  First Amended Complaint, ¶ 131. While the Agreements purport to protect confidential information that could constitute trade secrets, they also contain provisions unrelated to the misappropriation of trade secrets.  See e.g. June 2000 Agreement, ¶ 3; July 2001 Agreement, ¶¶ 3-4.  For example, the July 2001 Agreement contains an express restriction of activity during employment as follows: "Employee agrees to devote his/her entire time and best effort to the business activities of the Company and not to engage directly or indirectly in any other business activities than those of the [Plaintiffs]."  July 2001 Agreement, ¶ 3.  Plaintiffs assert that Blackstone and the Panacea Defendants induced Butler to commit breaches in addition to the communication of confidential information.  Again, Count IV as alleged stems from conduct other than misappropriation of trade secrets and, thus, is not preempted by the ITSA.

In Count VIII, Plaintiffs allege unjust enrichment.  According to Plaintiffs, despite a demand, Butler failed to return customer files and documents in his possession.  Plaintiffs assert that, as a proximate cause of this failure, One Medical was placed at a serious competitive disadvantage

because it did not have valuable historical customer and sales information for Butler's territory, resulting in Plaintiffs' loss of stimulator sales business to Defendants and others.   First Amended Complaint, ¶¶ 165-66. Blackstone's Motion to Dismiss mischaracterizes the allegations of Count VIII, asserting that Plaintiffs allege unjust enrichment arising out of Butler's failure to return confidential information in his possession.  The allegations on their face are not so narrow, but rather refer to customer files and other documents.  Viewing the allegations in the light most favorable to Plaintiffs, as the Court must do at this stage, Count VIII is not restricted to claims arising out of the misappropriation of trade secrets, but may potentially include other information that falls outside the ITSA definition of trade secret as well.  See Abanco Intern., Inc. v. Guestlogix Inc., 486 F.Supp.2d 779, 781-82 (N.D. Ill. 2007).  The Motion to Dismiss Count VIII is denied.

In Count IX, Plaintiffs allege a civil conspiracy, specifically that Blackstone, Panacea, Riley, and Pagano engaged in concerted unlawful actions as alleged in the First Amended Complaint.   First Amended Complaint, ¶¶ 172-73.  As set forth above, the alleged unlawful acts set out in the First Amended Complaint go beyond trade secret misappropriation. Thus, the civil conspiracy count is not dependant upon misappropriation

14

and is not preempted by ITSA.  The request to dismiss Count IX on this basis is denied.  In the alternative, Blackstone asserts that Count IX should be dismissed because it merely duplicates Plaintiffs' underlying tort claims. Under Illinois law, "'Civil conspiracy is an intentional tort and requires proof that two or more persons knowingly and voluntarily participate in a common scheme to commit an unlawful act or a lawful act in an unlawful manner.'"  Hay Group, Inc. v. Bassick, 2005 WL 2420415, *11 (N.D. Ill. September 29, 2005) (quoting Lenahan v. Univ. of Chi., 808 N.E.2d 1078, 1087 (Ill. App. 1st Dist. 2004)).  Illinois courts instruct that "[t]o state a claim for civil conspiracy, plaintiff must allege an agreement and a tortious act committed in furtherance of that agreement."  Lenahan, 808 N.E.2d at 1087.  The allegations of Count IX address both of these elements and, thus, Count IX cannot be said to merely duplicate the underlying tort claims.  Blackstone's request to dismiss Count IX is denied.

In Count X, Plaintiffs allege tortious interference with prospective economic advantage.  "Under Illinois law, to state a claim for tortious interference with prospective economic advantage, plaintiffs must allege that: (1) the plaintiff had a reasonable expectation of entering into a valid business relationship; (2) the defendants knew of this expectancy; (3) the

defendants intentionally and unjustifiably interfered to prevent the expectancy from being fulfilled; and (4) damages." Integrated Genomics, Inc. v. Kyrpides, 2008 WL 630605, at *12 (N.D. Ill. March 4, 2008) (internal quotations and citations omitted).  Plaintiffs allege that they had a reasonable expectation of maintaining a business relationship with their customers and with One Medical and its prospective employees.  According to Plaintiffs, Defendants purposefully interfered with those relationships while Butler was still employed by Plaintiffs by diverting customers from Plaintiffs and by securing a sales position with Defendants for a friend of a physician customer of the Plaintiffs, with the understanding that the customer would then purchase stimulator devices from the friend rather than from Plaintiffs through One Medical.  First Amended Complaint, ¶¶ 76, 178, & 181.  Thus, the tortious interference with prospective economic advantage claim rests on conduct other than the misappropriation of trade secrets and is not preempted by ITSA.

In the alternative, Blackstone asserts that Count X should be dismissed because it fails to allege that the tortious interference was directed at a third party.  However, as set forth above, Plaintiffs allege conduct directed at Plaintiffs' customers and at least one prospective One Medical

16

employee.   These allegations are sufficient to meet the pleading requirements of the Federal Rules.  Blackstone's request to dismiss Count X is denied.

### B.   DEFENDANTS PANACEA, RILEY, and PAGANO

The Court turns next to the Panacea Defendants' Motion for Judgment on the Pleadings.  Under Federal Rule of Civil Procedure 12(c), a party may move for judgment on the pleadings after the complaint and answer have been filed.  Rule 12(c) motions for judgment on the pleadings are reviewed under the same standard as Rule 12(b)(6) motions.  Pinnacle Opportunities, Inc. v. American Federation of State, County, and Municipal Employees, Council 31 and its Local 3348, AFL-CIO, 2009 WL 212077, *1 (C.D. Ill. January 29, 2009).  The Panacea Defendants seek to adopt the arguments set out in Blackstone's Motion to Dismiss and Memorandum.  Because the material allegations addressed in Blackstone's Motion to Dismiss apply equally to the Panacea Defendants, the Court allows the request to incorporate by reference.  The Panacea Defendants rely entirely upon Blackstone's submissions and do not add arguments of their own.  As the Court has previously noted, the standard for analyzing the 12(c) motion is the same as the one used in analyzing Blackstone's Rule 12(b)(6) motion.

Therefore, the Panacea Defendants' request for judgment on the pleadings is denied for the reasons set forth in subsection A, supra.

C.    DEFENDANT BUTLER

Defendant Butler has filed a Motion for Judgment on the Pleadings, seeking judgment on Counts II, III, VIII, IX and X of the First Amended Complaint.  Butler also seeks to incorporate by reference Blackstone's Motion to Dismiss and Memorandum.  The Court allows this request.  In analyzing Butler's Motion, the Court considers Blackstone's arguments to the extent that they apply to Defendant Butler, but rejects them for the reasons set forth in subsection A, supra.

Butler's request for judgment on the pleadings relies solely on Blackstone's submissions; Butler fails to provide the Court with any additional argument in support of his Motion.  Blackstone's submissions did not address Counts II and III, which allege claims only against Butler. Thus, Butler's challenge to the sufficiency of Counts II and III is deficient under Local Rule 7.1(B) because he fails to specify points or propositions of law to support his position.  Butler's request for judgment in his favor on Counts II and III is denied on this basis.  Moreover, to the extent Butler is seeking to apply Blackstone's ITSA preemption argument to Counts II and

III, the argument is unpersuasive.  Both Count II and III allege conduct beyond trade secret misappropriation.

CONCLUSION

THEREFORE, for the reasons set forth above, Defendant Blackstone Medical, Inc.'s Motion to Dismiss Counts IV, V, VIII, IX, and X of Plaintiff's First Amended Complaint (d/e 51) is DENIED.  Defendants Panacea Health LLC's, Anthony Riley's and Anthony Pagano's Motion for Judgment on the Pleadings and to Adopt and Incorporate by Reference (d/e 53) is ALLOWED, in part, and DENIED, in part.  The request to incorporate by reference is ALLOWED; the Motion is DENIED in all other respects.  Defendant Dan Butler's Motion for Judgment on the Pleadings and to Adopt and Incorporate by Reference (d/e 64) is ALLOWED, in part, and DENIED, in part.  The request to incorporate by reference is ALLOWED; the Motion is DENIED in all other respects.  Defendant Blackstone is directed to file an Amended Answer addressing all Counts of the First Amended Complaint on or before March 9, 2009.

IT IS THEREFORE SO ORDERED.

ENTER:   February 17, 2009

FOR THE COURT:

_____ s/ Jeanne E. Scott _____
                    JEANNE E. SCOTT
              UNITED STATES DISTRICT JUDGE